UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

DON KEMP,

        Plaintiff,

        v.                              Case No. 06-C-0077

GLENN GRIPPEN and
UNITED STATES OF AMERICA,

        Defendants.

---

DECISION AND ORDER GRANTING SUMMARY JUDGMENT
AND DISMISSING CASE

Pro se plaintiff, Don Kemp, has filed a complaint against Glenn Grippen, individually and in his official capacity as director of the Zablocki Veterans Affairs Medical Center ("ZVAMC"). (Compl. at 1.) Kemp asserts that his constitutional rights were violated and that Grippen was committing medical malpractice. Kemp seeks declaratory judgment, preliminary and permanent injunctive relief, and monetary damages. (Compl. ¶ 25.)

Specifically, Kemp alleges that he had surgery at the ZVAMC in 1999, from which he suffered complications, and that since that surgery he has suffered an exacerbation of previous health problems as well as new health problems, including headaches, deteriorating vision, memory and concentration impairment, coughing and esophageal spasms, breathing difficulty, partial facial and extremity paralysis, numbness and edema, and thyroid and heart problems. (Compl. ¶¶ 1-6.) According to Kemp, under Grippen's direction others at the ZVAMC have refused to treat any of these health problems or to conduct tests necessary to establish their causes; provided contradictory diagnoses of certain health problems; diagnosed him with diabetes but refused to treat him

for it; refused to treat his fractures, hip pain and bone disorders, periodontal disease, and potentially fatal health problems; and refused to honor any test or treatment recommendations by others on the ZVAMC's medical staff. (Compl. ¶¶ 7-16.) Kemp says that under Grippen's direction other staff members at the ZVAMC have violated federal law and regulations by refusing to inform him of treatment plans or to allow him to participate in decisions regarding his health care and by not affording him the internal review or adjudication processes of the Veterans Administration. (Compl. ¶¶ 19-20.) Additionally, according to Kemp he was refused treatment in retaliation for other complaints he has filed. (Compl. ¶ 21.) Further, Kemp asserts that Grippen has removed doctors from his case and has made untrue statements in prior litigation. (Compl. ¶¶ 11, 17-18.)

As this court's Decision and Order of March 20, 2007, notes, the constitutional claims proceed against Grippen in his individual capacity as well as in his official capacity. The latter claim effectively means the official capacity claim is against the United States as Grippen's employer. Lastly, the United States is the sole defendant for Grippen's medical malpractice claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. (Decision and Order of 3/20/07 at 2.)

Defendants' motion for summary judgment is now before the court for decision.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S.

2

317, 322 (1986). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In such a situation no genuine issue as to any material fact exists, as a complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial. *Id.* at 322-23.

The court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Butera v. Cottey,* 285 F.3d 601, 605 (7th Cir. 2002). However, the nonmovant may not rest on the pleadings but must respond with affidavits or other evidence containing specific facts establishing genuine issue for trial. Fed. R. Civ. P. 56(e)(2).

KEMP'S FAILURE TO RESPOND TO PROPOSED FINDINGS

The defendants filed their motion for summary judgment on May 4, 2007. In a certificate of service, defense counsel avers that she mailed a hard copy of the motion and supporting documents to Kemp at a certain post office box that Kemp identified as his current address when filing this case. However, to date Kemp has not responded to the defendants' summary judgment motion.

In their motion, the defendants complied with Civil L.R. 56.1, providing required warnings and the text of federal and local rules of civil procedure regarding summary judgment motions. Included in the quoted rules is the language of Civil L.R. 56.2(e): "In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set

3

out." (Mot. Summ. J. at 5.) Because the complaint was not signed under the penalty of perjury as required by 28 U.S.C. § 1746,[1] the factual assertions in Kemp's complaint cannot be considered in deciding defendants' motion.

UNDISPUTED FACTS

The ZVAMC is a medical center within the Veterans Health Administration ("VHA"), and is part of the Department of Veterans Affairs (the "Department"). (Defs.' Br. in Supp. § III (Proposed Findings of Fact) ("DPFOF"), ¶¶ 1, 4.) The facility has approximately 2500 employees, 170 acute care beds, 113 nursing home beds, 356 domiciliary beds, and outpatient clinics providing approximately 543,000 visits per year for 54,000 veterans. (DPFOF ¶¶ 6, 8.) Glenn Grippen has been the director of the ZVAMC since 1997. (DPFOF ¶ 9.)

As director of the ZVAMC, Grippen serves in an administrative role; he is not a physician and does not personally provide veterans with medical care. (DPFOF ¶ 12.) Grippen has not provided Kemp with medical care. (DPFOF ¶ 17.) However, Grippen is familiar with Kemp because Kemp receives medical treatment at the ZVAMC, Grippen has received letters from Kemp to which he has responded, and Grippen has received Congressional inquiries about Kemp and has responded to them. (DPFOF ¶¶ 13-15.) Grippen does not recall any face-to-face meetings with Kemp. (DPFOF ¶ 16.)

Grippen has not directed staff at the ZVAMC to refuse to treat any of Kemp's health care problems or conduct tests. (DPFOF ¶¶ 18, 19, 20, 23.) Moreover, Grippen

---

[1] In Kemp's complaint he states: "I attest and affirm that all statements herein are correct, to the best of my first-hand knowledge, belief and information." (Compl. 1.) That statement is not sufficient. He does not swear under penalty of perjury that the statements are true and correct, nor does his "belief and information" qualify as personal knowledge, see Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowlege . . . and show that the affiant is competent to testify on the matters stated.").

4

has not directed ZVAMC staff to contradict each other about whether Kemp's symptoms are muscle or nerve. (DPFOF ¶ 21.) Nor has he removed any doctor from Kemp's care or directed ZVAMC staff to refuse to treat Kemp's diabetes. Further, Grippen has not directed ZVAMC staff to refuse to inform Kemp of his treatment plans or to allow him to participate in decisions regarding his health care. (DPFOF ¶ 25.) Lastly, Grippen did not directly or indirectly cause ZVAMC staff to refuse any internal review processes affecting Kemp within the Department. (DPFOF ¶ 26.)

The Department has established the VHA Patient Advocacy Program, aimed at ensuring that the complaints of veterans served in VHA facilities and clinics are addressed in a convenient and timely manner. (DPFOF ¶¶ 27, 28.) From June 3, 1997, to May 4, 2007, Kemp used the Patient Advocacy Program twenty-one times. (DPFOF ¶ 31.) From September 1998 through May 4, 2007, Kemp contacted a Patient Advocate at various times about his medical care, billing, prescriptions, change of primary care provider, and need for certain tests, or with requests for test results and other information. (DPFOF ¶¶ 34-37, 42-81.) Each time the Patient Advocate responded by scheduling or sending Kemp for tests or examination, contacting the admission department to discuss billing, referring Kemp to offices within the Department, consulting the primary care office to request a change of Kemp's provider, consulting the pharmacy department regarding medications, providing Kemp with test results, or recommending that Kemp obtain a case manager to assist him. (*Id.*) In due course, Kemp was assigned a case manager. (DPFOF ¶ 77.)

Between 1997 and 1999, a Patient Advocate received inquiries about Kemp from Senators Kohl and Feingold as well as Congressman Thomas Barrett, and Grippen

5

responded to each inquiry. (DPFOF ¶¶ 32, 33, 38-41, 87, 88, 92-97.) In 2005, Kemp sent letters to Congressman James Sensenbrenner, which were forwarded to Grippen for a response. Grippen responded, providing the name of a certified nursing assistant who could help Kemp with his concerns, directing Kemp to contact the Patient Advocate, and apologizing for a testing miscue in the eye clinic. (DPFOF ¶ 110-116, 127-128, 130-131, 133.)

In August 2005, Kemp wrote to the "yellow team nurse" regarding blood tests. (DPFOF ¶¶ 117, 118.) Grippen responded with a letter, stating that the inquiry had been forwarded to Kemp's primary care team, that necessary blood work had been scheduled, and that Kemp should contact his case manager. (DPFOF ¶ 119.) In October 2005, Kemp wrote to the chief of staff at the ZVAMC stating that he needed a head-and-neck MRI and discussing an upcoming appointment with a Dr. Reynolds. (DPFOF ¶¶ 120-122.) Grippen responded, stating that doctors use clinical judgment in ordering tests and suggesting that Kemp contact his case manager. (DPFOF ¶¶ 123, 124.)

Kemp sent Grippen additional letters in December 2005, February 2006, and June 2006, to which Grippen responded. (DPFOF ¶¶ 129, 132, 133, 140, 142, 146, 152.)

Grippen has never directed the Patient Advocate to ignore Kemp's complaints or negatively influenced the Patient Advocate's responses to Kemp and has never directed ZVAMC staff to refuse to treat Kemp in retaliation for complaints he has filed against the ZVAMC. (DPFOF ¶¶ 89, 90.) Nor has Grippen directed ZVAMC staff to violate Kemp's constitutional rights. (DPFOF ¶ 156.)

In 2001, the Department established a VHA Clinical Appeals Process for handling patient issues following an impasse between a patient and a health care facility

6

regarding clinical care. (DPFOF ¶ 82, 83.) If a clinical dispute cannot be resolved at the facility level, the facility must provide written notice of its final decision and describe the clinical appeals process. (DPFOF ¶ 84.) According to the records of the Patient Advocacy Program, the ZVAMC has addressed and resolved Kemp's complaints at the facility level. (DPFOF ¶ 86.) Regardless, Kemp has never filed a clinical appeal regarding his medical care at the ZVAMC. (DPFOF ¶ 85.)

Grippen has no authority to order, direct, or influence veterans benefits awarded or denied by the Veterans Benefits Administration, which is a separate administration of the Department. (DPFOF ¶¶ 1, 11.)

Kemp filed a "Litigation Notice" with the Department on August 24, 1999, containing general and vague allegations of medical malpractice. (DPFOF ¶ 157.) By certified letter, Kemp was advised that he needed to provide additional information concerning his claim, including the dates of the incidents and the departments or employees involved. (DPFOF ¶ 158.) Nevertheless, Kemp failed to provide additional information. (DPFOF ¶ 159.) As a result, the Department was unable to investigate the claim. (DPFOF ¶ 160.) On March 22, 2000, the claim was returned to Kemp as defective; Kemp was advised that upon correction of the deficiency, his claim could be refiled with the Department. (DPFOF ¶ 161.)

Kemp did not refile this claim. (DPFOF ¶ 162.) Nor did Kemp file any other administrative tort claim. (DPFOF ¶ 162.) Both a staff attorney and the Department's Acting Assistant Regional Counsel assigned to Milwaukee checked available records within the Department and found that Kemp has not filed any other claims of medical malpractice

7

and that he has failed to exhaust any claims related to medical malpractice or other medical treatment. (Hart Aff. filed 5/4/07 ¶¶ 4-6; Hansen Aff. filed 5/4/07 ¶¶ 4-6.)

Kemp has filed two other lawsuits naming Grippen a defendant. (DPFOF ¶¶ 163, 164.) In neither case did Grippen file a declaration or affidavit. (DPFOF ¶ 165.)

CONSTITUTIONAL AND FEDERAL LAW CLAIMS

A.  Claims against Grippen Individually

Kemp can sue Grippen under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because *Bivens* liability flows to each officer individually, a plaintiff may sue a particular defendant only for his own acts, not the acts of others; there is no liability pursuant to a respondeat superior theory. *See Alejo v. Heller*, 328 F.3d 930, 932, 936 (7th Cir. 2003); *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997) (To state a cause of action under *Bivens*, the plaintiff must allege facts showing that the individual defendant was involved personally in the deprivation of the plaintiff's constitutional rights.) An official meets the personal involvement requirement if a constitutional deprivation occurs at his direction or with his knowledge and consent. *Gossmeyer*, 128 F.3d at 494.

The undisputed facts establish that Grippen has violated none of Kemp's constitutional or federal law rights. Kemp has not established that Grippen participated personally in or caused unconstitutional actions. Regarding Kemp's complaints about his medical care, Grippen is not a doctor and does not provide veterans with medical care. Nor has Grippen directed any staff member to refuse Kemp treatment for his health care problems or tests necessary to establish the causes of Kemp's problems. As indicated in the undisputed facts set forth above, Grippen has not directed any staff at ZVAMC to

8

contradict each other regarding Kemp, nor has he removed any doctor from Kemp's care. Grippen has not directed ZVAMC staff to keep Kemp in the dark about his treatment plans nor has he prevented Kemp from participating in his health care decisions.

Grippen did not, and did not direct any ZVAMC staff to, refuse Kemp access to any internal review processes within the Department. Instead, Kemp used the resources of the Patient Advocate numerous times and there is no evidence of any unresolved complaints by Kemp at the facility level. Further, Grippen responded to inquiries regarding Kemp from senators and congressmen and to Kemp's letters of complaint. To the extent that Kemp *might* be arguing that Grippen interfered with Kemp's benefits through the Department, the court concludes from this record that Grippen has no authority to order, direct, or influence the award or denial of such benefits.

Further, nothing submitted with respect to the pending motion for summary judgment suggests that Grippen violated any of Kemp's constitutional or federal right. Moreover, Kemp has not specified the rights he thinks were violated.

A Fifth Amendment substantive due process claim requires the "most egregious" government conduct, i.e., conduct that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). Negligently inflicted harm is not enough. *Id.* at 849. Here, there are no facts on which a reasonable jury could find egregious or shocking conduct by Grippen. An equal protection claim requires evidence that one was treated differently because of one's membership in a certain class or, alternatively, that one was treated differently as a "class of one." *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). Nothing before this court demonstrates that Kemp was subjected to improper

9

treatment because of his membership in any class. As for class-of-one, a plaintiff must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," *Bell*, 367 F.3d at 707 (internal quotation marks omitted), or that he is being "pick[ed] on" out of spite or vindictiveness unrelated to a legitimate governmental objective, *Albiero*, 246 F.3d at 932. Again, there is no evidence that Kemp has been treated differently from others, that Grippen dealt with Kemp irrationally, or that Grippen acted vindictively toward Kemp.

As for Kemp's claim that Grippen made false statements in prior litigation, even if such conduct might be considered a constitutional tort, Kemp has failed to support his allegation with any proof. The dockets from the two prior cases in this district in which Kemp sued Grippen, i.e., case numbers 03-C-599 and 06-C-76, of which this court takes judicial notice, indicate that Grippen filed no declaration or affidavit. Hence, nothing supports Kemp's charge that Grippen made a false statement under oath or that any such statements are actionable.

To the extent that Kemp may be arguing that Grippen has violated federal law by interfering with the provision of benefits to which Kemp is entitled as a veteran and asking the court to order that he receive certain medical services, this court lacks jurisdiction to hear the claim. Title 38 U.S.C. § 1710(a)(1) states that the Secretary of the Department "shall furnish hospital care and medical services which the Secretary determines to be needed–(A) to any veteran for a service-connected disability; and (B) to any veteran who has a service-connected disability rated at 50 percent or more." The Secretary's decisions regarding the provision of benefits are not subject to review by the district court.

10

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans . . . . Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court . . . .

38 U.S.C. § 511(a).[2] The Board of Veterans Appeals determines appeals from the Secretary's decisions regarding benefits; the Court of Appeals for Veterans Claim then may review the decisions of the Board. 38 U.S.C. §§ 7104, 7252. In *Larrabee by Jones v. Derwinski*, 968 F.2d 1497, 1500-01 (2d Cir. 1992), the Second Circuit held that § 511(a) precludes federal courts from hearing claims seeking a particular type or level of medical care, even if couched in constitutional terms. In *Larrabee*, the plaintiff's conservator and the VA disagreed on the appropriate placement and treatment for the plaintiff's condition. The conservator sued, seeking declaratory and injunctive relief, charging procedural and substantive due process violations. However, the court found that it lacked subject matter jurisdiction to consider whether the defendants had violated due process. *Id.* at 1499-1501. Also, generally asserting a constitutional violation is insufficient to avoid application of § 511(a). *See Deloria v. Veterans Admin.*, 927 F.2d 1009, 1013 (7th Cir. 1991) (discussing the statute as formerly numbered at 38 U.S.C. § 211(a)).

Kemp has passed up his chance to suggest any other constitutional rights that might have been violated, and the court sees none. Grippen has challenged every possible constitutional violation in its motion for summary judgment. (Mot. Summ. J. 33-38.) And, Kemp has failed to rebut the evidence presented by the defendants indicating

---

[2]The exceptions in subpart (b) permit review of matters involving the Secretary's rulemaking, servicemembers' and veterans' group life insurance, and housing and small business loans, and authorize review of the Secretary's decisions by the Court of Appeals for Veterans Claims. 38 U.S.C. §§ 511(b), 502, 1975, 1984, ch. 37, ch. 72; 5 U.S.C. § 552(a), 553.

11

that none of Kemp's constitutional or federal rights has been denied by Grippen. Thus, Kemp's claims against Grippen individually must be dismissed.[3]

B. Claims against Grippen in his Official Capacity

When a federal official is sued in his official capacity the suit is, in reality, a case against the United States. *See Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

The doctrine of sovereign immunity protects the United States from suit except when Congress has "unequivocally expressed" a waiver of immunity. *See United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992) (internal quotation marks omitted). Waivers of sovereign immunity are strictly construed in favor of the government. *Id.* at 34. Cases in which the government has not waived its immunity are outside the subject matter jurisdiction of the district courts. *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003).

Kemp has failed to point to any basis for finding that the United States has waived its sovereign immunity regarding his constitutional claims. In *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 115-17 (6th Cir. 1988), claims against IRS employees acting in their official capacities were barred by the doctrine of sovereign immunity. The same immunity applies here, and the official capacity claims are barred.

Further, even if Kemp's claim could proceed, summary judgment in the government's favor would be required. The official capacity claims are based solely on Grippen's alleged conduct as director of the ZVAMC. Yet Kemp has failed to prosecute

---

[3] Because Kemp has failed to rebut the defendants' evidence showing that Grippen has not violated any of Kemp's constitutional or federal rights, the court need not discuss whether any such rights of Kemp's were clearly established for purposes of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

12

his claims by responding to the defendants' summary judgment motion for the purpose of establishing a constitutional or federal law violation by Grippen in *any* capacity.

FEDERAL TORT CLAIMS ACT

Kemp sues the United States under the Federal Tort Claims Act ("FTCA"). The FTCA acts as a "limited waiver of sovereign immunity by the United States government which, with exceptions, provides a remedy in tort for persons injured by the negligence of government agents acting in the course and scope of their official duties." *Janowsky v. United States*, 913 F.2d 393, 396 (7th Cir. 1990). The United States agrees to be subject to liability for the torts of its employees committed in the course of their employment, in accordance with the law of the state in which the alleged tort occurred. *Id.* (citing 28 U.S.C. § 1346(b)). Here, the United States has accepted that Grippen was acting with the scope of his official duties as the director or administrator of the ZVAMC. (Mot. Summ. J. at 44-45.)

However, as a prerequisite to commencing suit in this court under the FTCA, a plaintiff must file an administrative claim with the appropriate federal agency. 28 U.S.C. §§ 2401(b), 2675(a); *Frey v. EPA*, 270 F.3d 1129, 1135 (7th Cir. 2001); *Deloria*, 927 F.2d at 1011.[4] This requirement gives the federal agency the opportunity to investigate the claim and to consider resolving it before incurring the cost of litigation. *Deloria*, 927 F.2d at 1011.

As noted above, the Department of Veterans Affairs has not received any administrative tort claim from Kemp. The one claim Kemp filed in 1999, was returned as

---

[4]The Seventh Circuit has questioned whether compliance with the prerequisite is jurisdictional. *Frey*, 270 F.3d at 1135.

13

defective because Kemp failed to provide specific information regarding dates of his injuries and employees involved. Thereafter, Kemp declined to refile his claim. Moreover, that administrative claim could not cover any alleged torts occurring after the date of its filing in 1999, and Kemp failed to file any subsequent administrative claim. Therefore, pursuant to 28 U.S.C. § 2675(a), Kemp's FTCA claim cannot proceed.

## CONCLUSION

For the foregoing reasons,

IT IS ORDERED that the United States' motion for summary judgment is granted.

IT IS ORDERED that any claims by Kemp for provision of benefits by the ZVAMC or Department and against Grippen in his official capacity be dismissed for lack of subject matter jurisdiction and that all remaining claims in the case be dismissed on their merits.

Dated at Milwaukee, Wisconsin, this 14th day of January, 2008.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge